# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER ALLEN TATOMER,<br><br>Defendant. | 3:18-cr-00034-HDM-WGC<br><br>ORDER |

On April 11, 2018, an indictment was issued charging Defendant with Receipt of Child Pornography under 18 U.S.C. § 2252A(a)(2) and (b). (ECF No. 1). On January 16, 2019, Defendant filed a motion to suppress evidence. (ECF No. 32). The Government responded, (ECF No. 37), and Defendant replied (ECF No. 38). For the reasons set forth below, the motion is denied.

**I.  BACKGROUND**

The Affidavit of FBI Task Force Officer Gregory Sawyer, which was attached to the Application for Search Warrant, sets forth the following relevant facts:

### DETAILS OF THE INVESTIGATION

23. Pursuant to 18 U.S.C. § 2258A, Electronic Service Providers are required to report incidents of child

1

pornography to the National Center for Missing and Exploited Children (NCMEC) through the "CyberTipline."

24. The National Center for Missing and Exploited Children complies the information from the ESP then forwards the reported information to law enforcement operating in the area where the activity is believed to be occurring or originated from. This report is called a "CyberTip."

25. On July 17, 2017, Skype submitted a report to the National Center for Missing and Exploited Children regarding child pornography images that had been uploaded to their service. Two child pornography images were uploaded to the Skype account screen name "mayorcock." Skype identified the person using their service by the IP address used to login to the account 71.94.0.182.

26. An example of a child pornography file uploaded to the Skype service is as follows:

a) File Name: 22c32a2f-1e8b-494c-a4d4-3b64866d07a8.jpg

Description: This is a picture file showing a completely nude boy who appears to be approximately 13-16 years of age. The boy is in what appears to be a bathroom, has his arms raised over his head, and has an erection.

b) File Name: 9cced867d-1d14-45f9-903a-abf598e24057.png

Description: This is a picture file showing a completely nude young girl and adult male. The young girl is approximately 4-7 years of age and is laying down on a blanket with her hands behind her head. The adult male is straddling the young girls' chest and has one hand on his penis while the young girl performs fellatio on him. The adult male has his other hand on the young girls' vagina.

27. On or about March 2017 Sergeant Dennis Carry of the Washoe County Sheriff's Office engaged in undercover webchats using an undisclosed service targeting individuals exploiting children in the Northern Nevada region. One of those chats was with a person who identified himself as Chris Tatomer. During one of the conversations the person identifying himself as Chris

2

1    Tatomer suggested moving the conversation over to Kik or
     Skype.  Both of those services are commonly used by
     offenders seeking child pornography.

     28.  **THE SUBJECT OF THIS SEARCH WARRANT**

          IP Address:        71.94.0.182

          Skype Username:    mayorcock

          Subject:           Chris Tatomer

          Service Address:   5736 Sidehill Drive, Sparks,
                             Nevada

     29.  On August 30, 2017, an Administrative Subpoena was
     served upon Charter Communications requesting subscriber
     information and IP logs for the IP address 71.94.0.182.

     30.  Charter Communications responded to the
     Administrative Subpoena and provided the following
     information:

          Account holder: James Tatomer

          Service address: 5736 Sidehill Drive, Sparks,
                           Nevada

     31.  A check of the Nevada Department of Motor Vehicles
     shows Chris Tatomer claims 5736 Sidehill Drive, Sparks,
     Nevada as his address on his Nevada Drivers Licenses.

(ECF No. 32-1 at 14-16).

Based upon the information included in the Application for Search Warrant, the Magistrate Judge issued a search warrant on January 16, 2018.  (*See* ECF No. 32-1, 32-2).

**II. ANALYSIS**

In his motion, Defendant first argues that, (1) the warrant depended on a warrantless and illegal search by a state actor, NCMEC, and (2) the search warrant affidavit was based upon stale information that was not independently corroborated by law enforcement, and therefore, fruits of the warrant should be suppressed. (ECF No. 32).  Each argument is discussed in turn.

3

**A.  IS NCMEC A STATE ACTOR, AND IF SO, DID IT PERFORM A SEARCH WITHIN THE MEANING OF THE FOURTH AMENDMENT?**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S.CONST.AMEND.IV.  The Fourth Amendment's proscriptions on searches and seizures are inapplicable to private action." *United States. v. Tosti*, 733 F.3d 816, 821 (9th Cir. 2013) (citing *United States v. Jacobsen*, 466 U.S. 109, 113-14 (1984)).

The Defendant asserts that NCMEC is a state actor and cites to the Tenth Circuit case, *United States v. Ackerman*, in support of his position.  831 F.3d 1292, 1297 (10th Cir. 2016).  The defendant therefore contends that a warrant was required to conduct the search.  The court finds and concludes that even if NCMEC were considered to be a state actor, under the facts of this case it did not perform a search within the meaning of the Fourth Amendment.

In *Ackerman*, AOL identified one of four images attached to the defendant's emails as containing child pornography.  AOL forwarded the email and all four of the images to NCMEC, which opened the email and all the attached images.  NCMEC then alerted law enforcement about the presence of child pornography, as required by statute.[1]  The court held that NCMEC was acting as a

---

[1] 18 U.S.C. § 2258A(a) mandates that Internet service providers that obtain actual knowledge of any facts or circumstances evincing apparent child pornography violations must submit, as soon as reasonably possible, reports to the CyberTipline.  NCMEC is then required to forward each report it receives to law enforcement agencies.  *See id.* § 2258A(c).

4

government agent and expanded on the private search when it opened the three unidentified attachments because these items could have disclosed information that was "previously unknown to the government." 831 F.3d at 1301-04, 1306.

"Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information." *Tosti*, 733 F.3d at 821 (citing *Jacobsen*, 466 U.S. at 117). Any "additional invasions of… privacy by the government agent must be tested by the degree to which they exceed[] the scope of the private search." *Id.* (quoting *Jacobsen*, 466 U.S. at 115).

In *Tosti*, the Ninth Circuit concluded that no search had occurred within the meaning of the Fourth Amendment, where the government detectives' searches of child pornography on the defendant's computer derived from a private party's original search. *Tosti*, 733 F.3d at 821. The court held that the detectives' warrantless viewing of the photographs did not trigger the Fourth Amendment because the private employee's "prior viewing of the images had extinguished [the defendant's] reasonable expectation of privacy in them" and the detectives had viewed only the photographs that the private employee had already viewed. *Id.* at 821-822.

In the case at bar, Skype, a private party, is the entity that performed the search. Skype subsequently reported the uploading of child pornography to NCMEC, as is required by statute. There is no evidence that NCMEC, or Detective Sawyer, expanded on

5

the scope of the search that had already been conducted by Skype. Detective Sawyer and NCMEC reviewed only the photographs that the private party, Skype, had already reviewed. Therefore as distinguished from *Ackerman* and in line with the holding in *Tosti*, the warrantless viewing of the images by NCMEC and Detective Sawyer did not implicate the Fourth Amendment because the private entities viewing of the images extinguished the defendant's reasonable expectation of privacy. Therefore, the court does not, under the facts of this case, decide whether NCMEC is a state actor because NCMEC did not exceed the scope of the private search. Accordingly, the court finds that neither NCMEC nor Detective Sawyer performed a search within the meaning of the Fourth Amendment.

**B. WAS THE INFORMATION USED TO OBTAIN THE SEARCH WARRANT STALE?**

Defendant also argues that the information used to obtain the search warrant was stale, as approximately six months had passed from the time NCMEC received the CyberTip from Skype to the time the search warrant was sought. Defendant's argument that the information in the affidavit was stale is without merit.

An affidavit's facts must demonstrate the probability that, at the time the magistrate issues the warrant, the evidence that law enforcement officers seek will be present in the location they intend to search. *Durham v. United States*, 403 F.2d 190, 194 (9th Cir. 1968). "Information underlying a warrant is not stale 'if there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.'" *United States v. Schesso*, 730 F.3d 1040, 1047

(9th Cir. 2013) (quoting *United States v. Lacy*, 119 F.3d 742, 745-46 (9th Cir. 1997)). "The mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988). Rather, courts "evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (internal quotation marks omitted) (quoting *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991)).

In *Schesso*, law enforcement agents applied for a warrant to search the defendant's residence approximately 20 months after law enforcement officers confirmed that a child pornography video was made available. *Id.* at 1043. In holding that the information was not stale, the court cited the affidavit's statement that:

> [I]ndividuals who possess, distribute, or trade in child pornography "rarely, if ever, dispose of sexually explicit images of children" because these images are treated as "prized possessions." In light of the "nature of the criminal activity and property sought" and the reasonable inference that [defendant] fit the profile of a collector, the state court judge had ample reason to believe that the eDonkey video or other digital child pornography files would be present at [defendant's] residence a mere 20 months after the eDonkey incident.
>
> *Id.* at 745 (citation omitted); *see also United States v. Allen*, 625 F.3d 830, 842-43 (5th Cir. 2010) (holding that an 18-month delay between when defendant sent child pornography images through a peer-to-peer networking site and issuance of a search warrant did not render the information stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 117-19 (1st Cir. 2008) (concluding that the passage of over three years since the acquisition of information that defendant's brother, who shared defendant's residence, had purchased access to various child pornography websites, did not render that information stale.).

7

730 F.3d at 1047. In *Lacy*, based on an affidavit similar to that of the one in *Schesso*, the Court found that a search performed ten months after the images were downloaded was not stale. *Lacy*, 119 F.3d at 746.

Here, Detective Sawyer's affidavit also contained statements about the characteristics of people who distribute, receive, or possess images of child pornography, including that these individuals collect images that "are often maintained for several years and may be kept close by, usually at the individual's residence, to enable the collector to view the collection, which is valued highly." (ECF No. 32-1 at 13). Further, the time lapse here was substantially less than in *Lacy*, 119 F.3d at 746 (10 months) or *Schesso*, 730 F.3d at 1047 (20 months).

Therefore, the court finds that the information used to obtain the search warrant was not stale and the Magistrate Judge had a substantial basis for determining that there was probable cause to issue the search warrant.

**III. CONCLUSION**

For the foregoing reasons, the Motion to Suppress Evidence (ECF No. 32) is **DENIED**.

**IT IS SO ORDERED.**

DATED: This 9th day of April, 2019.

_____
HOWARD D. MCKIBBEN
UNITED STATES DISTRICT JUDGE

8